RECEIVED
OCT - 4 2010
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| RAYMOND LEE CLIFTON<br>FED. REG. NO. 00888-089 | DOCKET NO. 10-CV-1243; SEC. P |
| VERSUS | JUDGE DEE D. DRELL |
| HARLEY LAPPIN, ET AL. | MAGISTRATE JUDGE JAMES D. KIRK |

## REPORT AND RECOMMENDATION

Before the Court is the *pro se* complaint of Plaintiff Raymond Lee Clifton, filed pursuant to Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics[1] on July 22, 2010 [Doc. #1] and the Motion for Preliminary Injunction and Restraining Order [Doc. #2] filed that same date. Plaintiff claims that Defendants violated his right to due process and equal protection.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

## STATEMENT OF THE CASE

### I. Duration of confinement

First, Plaintiff challenges the fact or duration of his confinement. He claims that he is being held in violation of the laws of the United States, and he seeks an immediate release from

---

[1] In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), the Supreme Court recognized that certain circumstances may give rise to a private cause of action against federal officials that is comparable to the statutory cause of action permitted against state officials by 42 U.S.C.A. § 1983.

custody. Plaintiff alleges that the defendants violated the terms of the plea agreements with regard to Plaintiff's guilty plea to seven bank robberies in Texas, Missouri, and Louisiana. He claims that he is being forced to serve the same sentence a second time.

## *II. Lock Down*

### A. *Meals and Showers*

Plaintiff complains that on August 31, 2009, Defendants implemented the lock down of Pollock, which resulted in Plaintiff not being able to shower regularly. Plaintiff also complains that on September 24, 2009, Defendants showed favoritism by allowing a select group of inmates to go to their job at UNICORP, while the rest of the prison, including Plaintiff, remained on lock down. The UNICORP inmates received hot meals, while the rest got cold "sack meals" in their cells. Plaintiff complains that this occurred again on September 25, 28, 29, and 30, and October 1, 2, 7, 8, 9, 20, 21, and 22, 2009. He did not suffer any injury as a result of having to eat "sack meals" instead of hot meals or from the sporadic showers during lock down.

### B. *Law Library*

Plaintiff states that he was denied access to the law library during the period of lock down in September/October 2009. He complains that on October 6, 2009, the library was scheduled to

2

open at 8:15 a.m., but it remained closed all day.

Plaintiff also complains that from October 13, 2009 through July 22, 2010, he was made to chose between going to the law library and going to recreation or to dinner in the evenings. Then, beginning on October 17, 2009, Plaintiff had to chose between going to the law library and eating lunch in the dining room on the weekends. Plaintiff did not suffer any injury or miss any legal deadlines to his detriment as a result of the alleged denial of access to the courts.

#### C.  *Mail*

Plaintiff complains that during the lock down, legal mail was not delivered. However, he did not suffer any injury or miss any deadline as a result of the alleged deprivation of legal mail.

#### D.  *Religion*

Plaintiff complains that he was prevented from exercising his religion during periods of lockdown.

#### E.  *Administrative Remedies*

Plaintiff complains that administrative remedies were not available during the period of lock down. When administrative remedies were available, the defendants failed to investigate Plaintiff's claims of computational errors in the calculation of his sentence.

### III. Policies

Plaintiff complains that various prison policies impeded the exercise of his first amendment right. Specifically, he complains that the defendants placed label making machines in the law library, which caused "confusion, disturbance, noise, loss of concentration, over-crowding, etc." He complains that the defendants limited recreation so the prisoners who were bored and had nothing to do would go to the law library and cause disturbances. He concludes that the defendants caused equipment failures in the law library so inmates would miss legal deadlines. Still, he does not purport to have personally missed any filing deadlines with regard to any of his claims.

Plaintiff complains that the defendants charged exorbitant sums for photocopying and postage, and they erased telephone numbers off of the system and prevented inmates from receiving email.

Plaintiff complains that, under the pretext of restoring and perfecting security and good order within the prison, Defendants limited freedom of movement by placing fences throughout the prison, allowing only five minute prison moves at various times in the day, and call inmates to the dining hall, library, or recreation unit by unit rather than all at once. At times,

4

Defendants also kept white prisoners confined to their cells while allowing inmates of other races freedom of movement, or vice versa.

## LAW AND ANALYSIS

### *I. Duration of Confinement*

Plaintiff complains that he is being wrongfully imprisoned in violation of the laws of the United States of America. He seeks, in part, monetary damages for the wrongful incarceration. He also seeks a release from prison.

First, the Supreme Court of the United States has determined that in order to recover damages for allegedly unconstitutional imprisonment, a civil rights plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, or called into question by a federal court's issuance of a *writ of habeas corpus*. See Heck v. Humphrey, 512 U.S. 477, 486-87 (1994); Edwards v. Balisok, 520 U.S. 641 (1997)(extending Heck to prison disciplinary proceedings). A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under §1983. Id.

Thus, if a prisoner seeks damages for unconstitutional imprisonment, and he has not satisfied the favorable termination requirement of Heck, he is barred from any recovery and fails to state a claim upon which relief may be granted. See Randell v.

5

Johnson, 227 F.3d 300, 301 (5th Cir. 2000). **Plaintiff's conviction for which he is now incarcerated was not reversed on direct appeal, expunged by executive order, or called into question by a federal court's issuance of a *writ of habeas corpus*. Thus, his related claim for money damages is barred by Heck.**

To the extent that Plaintiff seeks an earlier release from prison, such relief is not available by way of a civil rights or Bivens action. See Carson v. Johnson, 112 F.3d 818, 820 (5th Cir. 1997) ("A habeas petition ... is the proper vehicle to seek release from custody."); Cook v. Texas Dept. of Criminal Justice Planning Dept., 37 F.3d 166, 168 (5th Cir.1994) (A §1983 action is appropriate for recovering damages resulting from illegal administrative procedures, but habeas is the appropriate federal remedy for a state prisoner challenging the fact of his confinement). **If Plaintiff seeks a speedier release from custody, he must file a *petition for writ of habeas corpus* in the appropriate court.**

## II. Conditions During Lock Down

Plaintiff complains of various conditions during a period of lock down. First, USP Pollock was apparently placed on lock down on August 31, 2009, due to gang related activities. Although there were limitations placed on the inmates' freedom during the period

6

of lock down, there was no substantially adverse effect on Plaintiff. Even if Plaintiff had been severely impacted, the Due Process Clause does not protect every change in the conditions of confinement that has a substantial adverse effect upon a prisoner. See Madison v. Parker, 104 F.3d 765, 767 (5th Cir. 1997) (citing Sandin v. Conner, 515 U.S. 472 (1995)). "Prisoners held in lawful confinement have their liberty curtailed by definition, so the procedural protections to which they are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all." Wilkinson v. Austin, 545 U.S. 209, 225 (2005) (citations omitted).

Moreover, "Prison administrators are responsible for maintaining internal order and discipline, for securing their institutions against unauthorized access or escape, and for rehabilitating, to the extent that human nature and inadequate resources allow, the inmates placed in their custody." Procunier v. Martinez, 416 U.S. 396, 404 (1974). In recognition of these interests, courts will uphold a prison regulation claimed to infringe a prisoner's constitutional rights if it is "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987).

To the extent that Plaintiff claims that the conditions of confinement during lock down rose to the level of an Eighth Amendment violation, he would have to allege that the conditions

7

were "cruel and unusual" under contemporary standards. Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Even if the conditions are restrictive or harsh, they are part of the penalty that criminal offenders pay for their offenses against society. Id. However, when the restrictions of confinement rise to a level that results in physical *torture*, it can result in pain without penological purpose constituting cruel and unusual punishment under the Eighth Amendment. Id. Plaintiff has not alleged such cruel or unusual conditions during the period of lock down, or at any other time for that matter.

**A. Food**

Plaintiff alleges that on September 24, 2009, Defendants showed favoritism by allowing a select group of inmates to go to their job at UNICORP, while the rest of the prison, including Plaintiff, remained on lock down. The UNICORP inmates received hot meals, while the rest got cold "sack meals" in their cells. Plaintiff complains that this occurred again on September 25, 28, 29, and 30, and October 1, 2, 7, 8, 9, 20, 21, and 22, 2009.

First, Plaintiff's general complaint that some inmates were allowed to work during lock down, while others were not, due to favoritism does not state a violation of a constitutional right. Moreover, his allegation is conclusory at best and insufficient to

state a claim for relief under Bivens. See Schultea v. Wood, 47 F.3d 1427, 1433 (5th Cir. 1995).

Plaintiff's complaint that he was served "sack meals" on thirteen days during lock down, as opposed to hot meals, is frivolous. The Fifth Circuit has stated that inmates have a constitutional right to receive reasonably adequate food. See George v. King, 837 F.2d 705 (5th Cir. 1987). However, the deprivation of food constitutes cruel and unusual punishment *only if it denies a prisoner the minimal civilized measures of life's necessities*. See Talib v. Gilley, 138 F.3d 211, 214 n. 3 (5th Cir. 1998). In Talib, the Fifth Circuit stated that even *missing* fifty meals over a five-month period did not constitute the denial of the minimal civilized measures of life's necessities. Here, Plaintiff does not complain that he was completely deprived of food for even a single day during lock down. He merely complains that he had to eat a cold "sack meal" as opposed to a more enjoyable hot meal on these thirteen days. The claim is de minimuss and does not amount to a deprivation of minimal civilized measures of life's necessities.

**B. Law Library**

Plaintiff states that he was denied access to the law library during the period of lock down in September/October 2009. He

9

complains that on October 6, 2009, the library was scheduled to open at 8:15 a.m., but it remained closed all day. Plaintiff also complains that from October 13, 2009 through July 22, 2010, he had to chose between going to the law library and going to recreation or dinner in the evenings. Then, beginning on October 17, 2009, Plaintiff had to chose between going to the law library and eating lunch in the dining room on the weekends.

Prisoners have a First Amendment right of meaningful access to the courts through adequate law libraries or assistance from legally trained personnel. See Bounds v. Smith, 430 U.S. 817, 828 (1977); Pembroke v. Wood County, 981 F.2d 225, 229 (5th Cir. 1993). However, "[w]hile the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." Eason v. Thaler, 73 F.3d 1322, 1328 (5th Cir. 1996) (quotation omitted).

Significantly, to state a claim that his constitutional right of access to the courts was violated, Plaintiff must demonstrate that his position as a litigant was *actually prejudiced*. See Lewis v. Casey, 518 U.S. 343, 356 (1996); Eason, 73 F.3d at 1328. The inmate must "demonstrate that the alleged shortcomings in the

10

library or legal assistance program *hindered his efforts to pursue a legal claim.*" Lewis, 518 U.S. at 351 (emphasis added).

Plaintiff wholly fails to allege the essential elements of a First Amendment claim in his complaint and additional memoranda. He suffered no actual legal prejudice as a result of the alleged denial of access to the courts. Thus, he would be unable to establish that the defendants' actions actually caused a legal deprivation. In Lewis, the Supreme Court made clear that an inmate must establish actual injury to state a claim for denial of his right of access to the courts. Plaintiff's claim regarding the access to the law library is frivolous and/or fails to state a claim for which relief can be granted.

## C.  Mail

Plaintiff complains that during the lock down, legal mail was not delivered. The same standard discussed above applies to this claim. Even if legal mail was not delivered during lock down as Plaintiff alleged, it in no way hindered his efforts to pursue a legal claim. Plaintiff did not suffer any injury or miss any deadline as a result of the alleged deprivation of legal mail.

## D.  Religion

Plaintiff complains that he was prevented from exercising his religion during the lock down. "The Constitution requires that

11

'reasonable opportunities must be afforded to all prisoners to exercise ... religious freedom.'" Green v. McKaskle, 788 F.2d 1116, 1126 (5th Cir. 1986)(quoting Cruz v. Beto, 405 U.S. 319, 322 n. 2 (1972)). While inmates clearly retain some protections afforded by the First Amendment, the rights of all prisoners are restricted. "'Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987)(quoting Price v. Johnson, 334 U.S. 266, 285 (1948)). The propriety of limiting prisoners' First Amendment rights "arise[s] both from the fact of incarceration and from valid penological objectives-including deterrence of crime, rehabilitation of prisoners, and institutional security." Id. (emphasis added).

Evaluation of these valid penological objectives is committed to the judgment of prison administrators, and courts must afford deference to their evaluation. Id. at 349. Thus, when the action of prison officials impinges on prisoners' constitutional rights, "the regulation is valid if it is reasonably related to legitimate penological interests." Id. In Plaintiff's case, although he and other inmates may have been prohibited from attending religious services while the entire prison was on lock down, that is not a

constitutional violation. First, these prohibitions serve the legitimate penological interests of maintaining institutional security and deterring conduct by any inmate that would pose a threat to security during the tumultuous period of institutional lock down. These concerns are reasonably related to legitimate penological interests.

Moreover, the restrictions do not constitute a substantial burden on Plaintiff's free exercise of his religion to such an extent that his limited First Amendment rights as a prisoner might be violated. See Canell v. Lightner, 143 F.3d 1210, 1215 (9th Cir. 1998)("relatively short-term and sporadic" interference with inmate's ability to pray not substantial burden on religious exercise); Hamilton v. Schriro, 74 F.3d 1545, 1551 (8th Cir.1996) (no constitutional violation when inmate has alternative means, including prayer, for practicing religion). Although Plaintiff may not have been able to attend formal services during the lock down, he was certainly able to pray in his cell. Plaintiff fails to state a claim for which relief can be granted because he has not alleged a constitutional violation.

### E. Administrative Remedies

Plaintiff complains that administrative remedies were not

13

available during the period of lock down; and, when administrative remedies were available, the defendants failed to investigate Plaintiff's claims of computational errors in the calculation of his sentence. First, Plaintiff was not injured or prejudiced by unavailable administrative remedy process. He does not present any allegations regarding a legal claim that he was prevented from raising due to the lock down, nor was any lawsuit dismissed due to his failure to exhaust administrative remedies. The fact alone that the administrative remedy process was not available does not establish a constitutional violation if Plaintiff was not affected by it. Second, to the extent that Plaintiff complains about the failure of the BOP to review the computation of his sentence, this claim must be pursued via petition for *writ of habeas corpus*, as discussed herein.

### III. Other Conditions

Plaintiff complains of other conditions such as noise from the label maker in the library, fences within the prison walls, and procedures for calling inmates to the dining hall in an orderly fashion, block by block or unit by unit, rather than all at once. These inconveniences hardly rise to the level of a constitutional deprivation. Moreover, "Prison officials should be accorded the widest possible deference in the application of policies and practices designed to maintain security and preserve internal order." Bell v. Wolfish, 441 U.S. 520, 547 (1979)). Federal courts

14

are not prison managers. In fact, the Supreme Court has continuously cautioned federal courts from assuming "a greater role in decisions affecting prison administration." Shaw v. Murphy, 532 U.S. 223, 230 (2001); *accord* Washington v. Harper, 494 U.S. 210, 223-24 (1990); Turner v. Safley, 482 U.S. 78, 84-85 (1987). These are simply the ordinary incidents of prison life.

### *IV. Named Defendants*

Plaintiff names as defendants Bureau of Prisons Regional Director Gerardo Maldonado and Bureau of Prisons National Director Harley G. Lappin. Plaintiff raises no specific factual allegations against these defendants. Presumably, Plaintiff named Maldonado and Lappin because they denied his administrative appeals. However, Plaintiff does not have a federally protected liberty interest in having his grievances resolved to his satisfaction. As he relies on a legally nonexistent interest, any alleged due process violation arising from the alleged failure to properly address his grievances is frivolous. See Geiger v. Jowers, 404 F3d. 371 (5th Cir. 2005).

### *V. Injunctive Relief*

Plaintiff seeks a temporary restraining order and preliminary injunction enjoining the defendants from numerous activities, including transferring Plaintiff or witnesses from USP Pollock

15

without Plaintiff's written stipulation or an order from this Court or from releasing Plaintiff pursuant to any detainers. He asks that the Court order Defendants to recognize Plaintiff and another inmate as co-litigants acting as each other's paralegal with a power of attorney granted to each other. Plaintiff wants this Court to reinstate a jury award of $2,000 from a 1996 court judgment. Plaintiff asks this Court to order the USP-P library to remain open from 7:30 a.m. to 8:30 p.m. and to allow prisoners access to the law library on an hourly basis, seven days a week.

First, to obtain a preliminary injunction, a Plaintiff must show (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) that his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) that granting the preliminary injunction will not disserve the public interest. See Planned Parenthood of Houston & Southeast Texas v. Sanchez, 403 F.3d 324, 329 (5th Cir. 2005).[2]

In this instance, Plaintiff cannot meet any of the three

---

[2] For a permanent injunction to issue, the plaintiff must prevail on the merits of his claim and establish that equitable relief is appropriate in all other respects. See Dresser-Rand Co. v. Virtual Automation Inc., 361 F.3d 831, 847 (5th Cir.2004) (citations omitted).

16

requirements. Plaintiff could not show a substantial likelihood that he would prevail on the merits. First, "a prison inmate does not have a protectable liberty or property interest in his custodial classification" and does not have a constitutional right to be housed in a particular facility. Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995); see also Olim v. Wakinekona, 461 U.S. 238, 244-45 (1983). In fact, it is up to the BOP to designate the place of imprisonment, not the Court. 18 U.S.C.A. §3621 (West. 2008). Thus, Plaintiff could not be successful on that claim.

Next, a prisoner does not have a constitutional right to assist other inmates in their legal proceedings. See Tighe v. Wall, 100 F.3d 41, 42 & n. 1 (5th Cir. 1996). Plaintiff and another Plaintiff are not entitled to serve as co-litigants acting as each other's paralegal with a power of attorney granted to each other.

Additionally, this is not a Court of appeals that can overturn or reinstate a decision by another federal court. Thus, this Court could not reinstate an award of $2,000 from a 1996 judgment rendered and overturned in another Court.

Finally, there is no authority for ordering the BOP to have a law library open eleven hours a day, seven days a week. Even in the "free world" there is not unlimited access to the library. The

right to access the courts requires that inmates be allowed a *reasonably adequate opportunity* to file *non-frivolous* cases challenging their convictions and the conditions of their confinement. Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999)(emphasis added). "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Lewis, 518 U.S. at 355. Prison officials have considerable discretion in choosing the mechanism and forms of assistance they will furnish to prisoners for the purpose of allowing prisoners to file non-frivolous legal claims. See Lewis, 518 U.S. at 356 ("Of course, we leave it to prison officials to determine how best to ensure that inmates... have a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement.") Plaintiff is not entitled to injunctive relief, and his motion [Doc. #2] should be denied.

## CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff's complaint [Doc. #1] be **DENIED** and **DISMISSED WITH PREJUDICE** as frivolous and failing to state a claim upon which relief may be granted under 28 U.S.C. §1915(e)(2)(B). **IT IS FURTHER RECOMMENDED** that the Motion for Temporary Restraining Order and Preliminary Injunction [Doc. #2] be **DENIED**.

**Under the provisions of Title 28, Section 636(b)(1)(c) of the**

United States Code and Federal Rule of Civil Procedure 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED at Alexandria, Louisiana, this ____ day of ___October___, 2010.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE